IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| RANDALL TODD ROYER, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | 1:14cv801 (LMB/IDD) |
| ) | 1:03cr296 (LMB) |
| ERIC D. WILSON, ) | |
| ) | |
| Respondent. ) | |

MEMORANDUM OPINION

Randall Todd Royer ("Royer" or "petitioner"), a federal inmate housed in the Eastern District of Virginia and proceeding pro se, has filed a Petition For Writ Of Habeas Corpus pursuant to 28 U.S.C. § 2241, in which he challenges his conviction under 18 U.S.C. § 924(c) as invalid because the Fourth Circuit has recently narrowed its interpretation of the "crime of violence" predicate for convictions under § 924(c). Respondent has filed an opposition to Royer's petition, and Royer's time to reply to respondent's opposition has expired. Therefore, this matter is ripe for adjudication. For the reasons that follow, Royer's petition for habeas corpus will be dismissed for lack of jurisdiction.

I. BACKGROUND

The following material facts are uncontroverted. On June 25, 2003, a grand jury returned an indictment charging Royer and ten other individuals with 41 counts, including conspiracy under

18 U.S.C. § 371, acquisition of a firearm with intent to engage in a crime of violence, and violations of the Neutrality Act, 18 U.S.C. § 960, arising out of their preparations for violent jihad overseas. Mem. Op. of Feb. 15, 2012, at 2.[1]

In August and September of 2003, four of the co-conspirators, Donald Thomas Surratt II, Yong Ki Kwon, Muhammed Aatique, and Khwaja Mahmood Hasan, entered into plea agreements with the government and pleaded guilty to various charges of the indictment. Id. at 3. As a result of new information obtained from these four co-conspirators, who were cooperating with the government pursuant to their plea agreements, the government obtained a 32-count superseding indictment against Royer and the remaining defendants on September 25, 2003. Id. Fourteen of those counts charged Royer with: various conspiracies, including a conspiracy to violate the Neutrality Act, to engage in armed hostility against the United States under 18 U.S.C. § 2390, and to contribute material support to the Taliban, al Qaeda, and LET; multiple firearm offenses in violation of 18 U.S.C. § 924; and aiding and abetting and substantive violations of the Neutrality Act. Id.

---

[1] The facts in this section are based on the fuller factual background provided in the Memorandum Opinion of February 15, 2012, which dismissed Royer's motion to vacate under 28 U.S.C. § 2255.

On January 16, 2004, Royer, who was represented by counsel, pleaded guilty to a two-count criminal information under a written plea agreement requiring his cooperation with the government in its prosecution of the remaining defendants. Id. Count One of the criminal information, the only count at issue in this petition, charged that Royer:

> [d]id unlawfully and knowingly aid and abet the use and discharge of a semi-automatic pistol by Masoud Khan, Yong Kwon, Mohammad Aatique, and Khwaja Hasan in Pakistan during, in relation to, and in furtherance of . . . the conspiracy [to commit a crime of violence] charged in Count One of the Indictment . . .

in violation of 18 U.S.C. 924(c). Id. at 4.

Count One of the superseding indictment, to which Count One of the criminal information refers, charged a conspiracy to commit five offenses against the United States and alleged two separate objects of that conspiracy. Id. Royer, however, limited his admission of guilt to the first object of the conspiracy, id. at 14 n.7, which was: to prepare for and take part in military expeditions to be carried on from the United States against the territory and dominion of foreign states, districts, and peoples with whom the United States was at peace, in violation of the Neutrality Act, 18 U.S.C. § 960, id. at 4.[2] The penalties to which Royer was exposed under Count One of the

---

[2] The second alleged object of the conspiracy was to enlist and engage with intent to serve in armed hostility against the United States, in violation of 18 U.S.C. § 2390. Mem. Op. of Feb. 15, 2012, at 4.

criminal information included a mandatory minimum sentence of ten years to a maximum of life imprisonment. Id.

Count Two of the criminal information charged Royer with aiding and abetting the carrying of an explosive during the commission of a felony that may be prosecuted in a U.S. court, in violation of 18 U.S.C. §§ 2, 844(h)(2), and 3238. Id. at 8 n.5. That offense carried, among other penalties, a mandatory term of incarceration of ten years, which had to run consecutive to the sentence on Count One. Id.

Based on the Statement of Facts attached to the plea agreement and Royer's representations during the plea colloquy, the Court accepted his guilty pleas. Id. at 4, 8. On April 9, 2004, Royer was sentenced to 20 years imprisonment, consisting of 120 months on Count One and 120 months on Count Two, to be served consecutively, as well as three years of supervised release on each count. Id. at 8. He did not appeal either his conviction or sentence. Id.

On March 16, 2009, Royer filed a motion under 28 U.S.C. § 2255 to vacate only the conviction as to Count One based on a gateway claim of actual innocence. The motion was dismissed as untimely; however, the Court also found that even if the motion had not been untimely, it would have failed on the merits because Royer was unable to establish his actual innocence of the offense to which he pleaded guilty and also could not

4

establish his actual innocence of the other charges that were dropped in consideration of his guilty pleas. Id. at 18-19 (citing Bousley v. United States, 523 U.S. 614, 624 (1998); Schlup v. Delo, 513 U.S. 298, 327-28 (1995)). Royer appealed the dismissal of his § 2255 motion on April 16, 2012, but then voluntarily dismissed the appeal on June 5, 2012.

## II. STANDARD OF REVIEW

Section 2255 is the primary means by which a federal prisoner may collaterally attack a conviction and sentence. See Rice v. Rivera, 617 F.3d 802, 807 (4th Cir. 2010) (per curiam). "[T]hose convicted in federal court are required to bring collateral attacks challenging the validity of their judgment and sentence by filing a motion to vacate sentence pursuant to [§ 2255]." Id. at 805 (quoting In re Vial, 115 F.3d 1192, 1194 (4th Cir. 1997) (en banc)). A prisoner may only bring a collateral attack under § 2241[3] if § 2255 is "inadequate or ineffective to test the legality of [his] detention." In re Jones, 226 F.3d 328, 332-33 (4th Cir. 2000) (quoting 28 U.S.C. § 2255(e)). Under limited circumstances, the "inadequate or ineffective" clause, known as the "savings clause," permits a

---

[3] In Boumediene v. Bush, the U.S. Supreme Court struck down paragraph (e) of 28 U.S.C. § 2241 as an unconstitutional suspension of the writ of habeas corpus. 553 U.S. 723, 732-33 (2008) (holding that aliens designated as enemy combatants and detained at the U.S. Naval Station at Guantanamo Bay, Cuba, have the constitutional privilege of habeas corpus). The remainder of § 2241, however, remains intact.

federal prisoner to bring a second or successive habeas petition pursuant to § 2241, despite the limitations imposed by § 2255. See id. at 333.

In considering whether the savings clause permits a petitioner to bring a second or successive petition pursuant to § 2241, the Fourth Circuit has developed a three-pronged test. Section 2255 is deemed inadequate or ineffective, and § 2241 may therefore be used to attack a federal conviction, when:

> (1) at the time of the conviction, settled law of this circuit or the Supreme Court established the legality of the conviction; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal; and (3) the prisoner cannot satisfy the gatekeeping provisions of § 2255 because the new rule is not one of constitutional law.

Id. at 333-34. Section 2255 will not be considered inadequate or ineffective simply because a petitioner is denied relief under that provision or because a petitioner is barred from filing a successive § 2255 motion. See San-Miguel v. Dove, 291 F.3d 257, 261 n.2 (4th Cir. 2002) (citing In re Vial, 115 F.3d at 1194 n.5); In re Jones, 226 F.3d at 333; see also Tolliver v. Dobre, 211 F.3d 876, 878 (5th Cir. 2000) (per curiam) ("We join our sister circuits that have held that a prior unsuccessful § 2255 motion, or the inability to meet . . . [the] 'second or successive' requirement [of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, § 105,

6

110 Stat. 1214, 1220], does not make § 2255 inadequate or ineffective.").

### III. DISCUSSION

Royer argues that a recent change in substantive, Fourth Circuit law has rendered the conduct underlying his conviction on Count One non-criminal. Pet. Writ of Habeas Corpus ("Pet.") 1. Count One charged Royer with violating 18 U.S.C. § 924(c), which states in pertinent part:

> (1)(A) Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence . . . (including a crime of violence . . . that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence . . .—
>
> (i) be sentenced to a term of imprisonment of not less than 5 years;
>
> (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and
>
> (iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.
>
> . . .
>
> (3) For purposes of this subsection the term "crime of violence" means an offense that is a felony and—
>
> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c).

Specifically, Royer contends that the methodology for determining whether a predicate offense is a "crime of violence" for purposes of § 924(c) has changed such that a violation of the Neutrality Act, 18 U.S.C. § 960, no longer constitutes a crime of violence. Pet. 1-2. Royer further argues that "§ 2241 is the appropriate vehicle for this claim because the change in law occurred subsequent to the filing of his § 2255 motion, depriving him of the chance to raise the issue in his first collateral attack" and because he meets the three-pronged Jones test. Pet. 2, 15.

Conversely, the government argues that although Royer may satisfy the third prong of the Jones test, he cannot satisfy the first two prongs because the law was not settled at the time of Royer's conviction and because the law governing whether a violation of the Neutrality Act constitutes a crime of violence for purposes of § 924(c) has not changed. Resp. to Pet. Writ of Habeas Corpus ("Resp.") 8, 13. Alternatively, the government asserts that Royer cannot obtain relief because he cannot show that he is actually innocent of the charges that were dismissed in consideration of his guilty pleas. Resp. 15.

Because Royer has not satisfied the three-pronged Jones test, his claim falls outside the § 2255 savings clause and he may not proceed under § 2241. Accordingly, his petition under § 2241 must be dismissed for lack of jurisdiction. See Rice, 617 F.3d at 807. Even if Royer could proceed under § 2241, his petition would still fail because Royer has offered no reason why the Court should reconsider its previous finding that he is not actually innocent of the more serious, dismissed counts of the superseding indictment, as is required under Bousley v. United States, 523 U.S. 614, 624 (1998).

### A. First Prong

The first prong of the Jones test addresses whether, "at the time of the conviction, settled law of this circuit or the Supreme Court established the legality of the conviction." In re Jones, 226 F.3d at 333-34. The government argues that Royer cannot satisfy this prong because in 2004 when Royer was convicted, there was no settled law as to whether a violation of the Neutrality Act constituted a "crime of violence" for purposes of § 924(c). Resp. 8-9. On the other hand, Royer contends that his conviction under Count One was initially legal because the Neutrality Act fit within the Fourth Circuit's then-existing method of determining whether an offense constituted a crime of violence for purposes of § 924(c). Pet. 15, 17.

Before pleading guilty, Royer and his co-defendants moved to dismiss the § 924(c) charges that were predicated on the Neutrality Act on the ground that the Neutrality Act did not constitute a crime of violence. The parties' briefs revealed no prior case law specifically addressing whether the Neutrality Act constituted a crime of violence for purposes of § 924(c).

This Court ruled that the Neutrality Act was a crime of violence, and the issue was not raised on appeal by Royer's co-defendants who were convicted at trial. See United States v. Khan, 309 F. Supp. 2d 789, 823 (E.D. Va. 2004), aff'd in part, remanded in part, 461 F.3d 477 (4th Cir. 2006), as amended (Sept. 7, 2006). Ten years later, there is still no authority outside of this Court's original ruling with respect to whether a violation of the Neutrality Act constitutes a predicate crime of violence for purposes of § 924(c). In this respect, the law regarding whether violating the Neutrality Act constituted a crime of violence was unsettled at the time of Royer's conviction and the first prong of Jones cannot be met.

Although no case law specifically addressed the Neutrality Act issue, Royer argues that the law was "settled" at the time of his conviction, thereby making his conviction legal, because violation of the Neutrality Act fit comfortably within the scope of the statutory definition of "crime of violence," as that term was then interpreted. Pet. 15-18. Specifically, he argues that

10

when he was convicted, the Fourth Circuit determined whether a particular offense constituted a crime of violence by looking to whether "most" of the instances of the offense presented "a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3); see, e.g., United States v. Aragon, 983 F.2d 1306, 1315 (4th Cir. 1993) (finding that the offense of assisting an escape was a crime of violence[4] even though "one could effectuate the escape of another without the use of physical force" because "the majority of cases have involved the use of physical force against either people or property" (citations omitted)).

This argument mischaracterizes the state of the law at the time because other than this Court, no court had actually ruled on whether, under the Fourth Circuit's methodology, a violation of the Neutrality Act was a crime of violence. The issue was, therefore, unsettled.

---

[4] Although the Aragon court was interpreting "crime of violence" as used in 18 U.S.C. § 16, the language of § 924(c)(3) mirrors that of § 16, and courts often use case law interpreting § 16 to guide their analysis of § 924(c)(3). See, e.g., United States v. Serafin, 562 F.3d 1105, 1108 (10th Cir. 2009) ("The Supreme Court has yet to interpret the crime of violence language in § 924(c)(3)(B), but it has interpreted the language in § 16(b).").

11

B. **Second Prong**

Even if the law were "settled" on this issue at the time of Royer's conviction, Royer clearly cannot satisfy the second Jones prong, under which a petitioner must show that "subsequent to the [petitioner's] direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which the [petitioner] was convicted is deemed not to be criminal." In re Jones, 226 F.3d at 334. This prong requires not only that the substantive law has changed since the time of Royer's conviction but also that the change has rendered his conduct non-criminal.

Relying on two en banc decisions, Royer contends that the Fourth Circuit has abandoned the "most cases" method of defining crimes of violence and instead looks to whether "the full range of conduct covered by the" statute falls within the definition of a crime of violence. Pet. 8 (citing United States v. Torres-Miguel, 701 F.3d 165, 171 (4th Cir. 2012)).

First, he relies on United States v. Vann, in which the Fourth Circuit held that, under its detailed analysis of the North Carolina indecent liberties statute, violations of this statute did not constitute a "violent felony" for purposes of the Armed Career Criminal Act ("ACCA"). See 660 F.3d 771, 772-73, 776 (4th Cir. 2011) (en banc) (per curiam). He also relies on United States v. Aparicio-Soria, in which the Fourth Circuit held that, under its detailed analysis of the Maryland crime of

resisting arrest, that crime did not qualify categorically as a "crime of violence" within the meaning of U.S. Sentencing Guideline § 2L1.2 ("re-entry Guideline"). See 740 F.3d 152, 153 (4th Cir. 2014) (en banc).

Neither of these cases helps Royer because they did not evaluate the Neutrality Act and did not address § 924(c), which defines "crime of violence" differently from the definition of that term in the re-entry Guideline and from the definition of "violent felony" in the ACCA.

Under the categorical approach, courts compare the statutory definition of the appropriate term, whether it be "crime of violence" or a similar term, "with the elements of the [offense] at issue." See, e.g., Aparicio-Soria, 740 F.3d at 154. Section 924(c)(3)(B), which applied to Royer's conviction, defines "crime of violence" as any felony offense that, "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3)(B). The Neutrality Act states:

> Whoever, within the United States, knowingly begins or sets on foot or provides or prepares a means for or furnishes the money for, or takes part in, any military or naval expedition or enterprise to be carried on from thence against the territory or dominion of any foreign prince or state, or of any colony, district, or people with whom the United States is at peace, shall be fined under this title or imprisoned not more than three years, or both.

13

18 U.S.C. § 960. Royer pleaded guilty to a conspiracy, one object of which was to prepare for and take part in military expeditions to be carried on from the United States against the territory and dominion of foreign states, districts, and peoples with whom the United States was at peace, in violation of the Neutrality Act.

As this Court has previously found, preparing for and taking part in a military expedition against a foreign country is a felony offense that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense. See Khan, 309 F. Supp. 2d at 823. Nothing in Royer's petition or in the cases he cites provides any basis to change that conclusion.

Accordingly, the second prong is not satisfied because Royer cannot show that the substantive law has changed such that the conduct of which he was convicted is now deemed non-criminal.

### C. Third Prong

The third prong of the Jones test is that the "prisoner cannot satisfy the gatekeeping provisions of § 2255 because the new rule is not one of constitutional law." In re Jones, 226 F.3d at 334. Here, if there is a new method for determining

14

whether an offense constitutes a crime of violence for purposes of § 924(c), it is a matter of statutory interpretation not of constitutional law. Because Royer's claim rests on an interpretation of Fourth Circuit law rather than on a new rule of constitutional law, he cannot satisfy the gatekeeping provisions limiting second or successive § 2255 motions. See In re Jones, 226 F.3d at 329. Therefore, had there been a change in the law as to whether a violation of the Neutrality Act constitutes a crime of violence, the third prong of the Jones test would be satisfied.

As discussed above, because Royer's claim does not satisfy the first and second prongs of the Jones test, he cannot rely on the savings clause of § 2255 and his § 2241 petition is, therefore, not cognizable. For these reasons, Royer's petition will be dismissed for lack of jurisdiction.

### D. Actual Innocence

Even if Royer could satisfy all three prongs of the Jones test, thereby entitling him to proceed by way of a § 2241 petition, his petition would fail because he cannot establish his actual innocence of the other counts in the superseding indictment that were dropped in consideration of his guilty pleas. As this Court has previously found, the "general limitation on habeas relief applies with 'special force' to 'convictions based on guilty pleas.'" Mem. Op. of Feb. 15,

15

2012, at 18 (quoting Bousley, 523 U.S. at 621); see also Bousley, 523 U.S. at 621 (indicating that "the circumstances under which a guilty plea may be attacked on collateral review" are "strictly limited").

Because Royer's petition is based on a claim of actual innocence of an offense to which he pleaded guilty, he "must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Id. at 623 (quoting Schlup v. Delo, 513 U.S. 298, 327-28 (1995)) (internal quotation marks omitted). Moreover, "where the Government has forgone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges." Id. at 624; see also Lewis v. Peterson, 329 F.3d 934, 936 (7th Cir. 2003) (explaining that the rationale behind the Bousley rule is that "the government would not have dropped a good count in plea negotiations had it known that the remaining count was invalid, and if the dropped charge was indeed a good count, the defendant would not have escaped punishment had it not been dropped"); Brewington v. United States, 4:08-CR-77-FL-1, 2012 WL 5463141, at *3 (E.D.N.C. Nov. 8, 2012) ("Under the rule stated in Bousley, petitioner must establish actual innocence for any 'more serious charges' forgone by the government during plea bargaining.").

Here, 14 counts in the superseding indictment were dismissed in favor of the two-count criminal information to which Royer pleaded guilty. Mem. Op. of Feb. 15, 2012, at 22. As Royer has previously acknowledged in his motion to vacate under § 2255, at least two of the 14 counts were "indisputably more serious than those in the information."[5] Id. at 23. These two counts consisted of weapons charges under 18 U.S.C. § 924(c) that alleged that Royer had aided and abetted Khan, one of his co-conspirators, in the use and discharge of a machine gun and a rocket-propelled grenade in furtherance of a crime of violence. Id. In dismissing Royer's motion to vacate under § 2255, this Court found that "there is no reasonable likelihood that Royer would have been acquitted of any count in the superseding indictment." Id. at 24. That finding is the law of this case, and Royer offers no reasons to change that finding. Royer does not argue that the substantive law underlying any of the dismissed counts has changed such that the Court should find him actually innocent of those offenses that were "more serious"

---

[5] In its opposition to Royer's motion to vacate under § 2255, the government argued that two additional counts in the superseding indictment—possession of an AK-47 in violation of § 924(c) and use and discharge of an AK-47—were "more serious" than the counts to which Royer pleaded because they would have carried a mandatory minimum sentence of 25 years under § 924(c)(1)(C)(i), which is five years more than the total sentence Royer actually received. Mem. Op. of Feb. 15, 2012, at 23-24. Further, the government argued that six other counts out of the 14 that were dismissed were "more serious" than the two offenses to which Royer pleaded. Id. at 24.

than the two counts to which he pleaded guilty. Indeed, Royer did not respond at all to the government's actual innocence argument.

Because Royer cannot show that he is actually innocent of the more serious charges that were dismissed in favor of his guilty pleas, his habeas petition would be dismissed, even if there were jurisdiction to consider it.

IV. CONCLUSION

For the reasons stated above, Royer's § 2241 petition will be dismissed for lack of jurisdiction by an appropriate Order to be issued with this Memorandum Opinion.

Entered this 4th day of November, 2014.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge